# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.     ROBBIE BURKE, as Personal Representative of the Estate of John Patrick Kaczynski, <br><br>         Plaintiff, <br><br> v. <br><br> 1.     LEFLORE COUNTY DETENTION CENTER PUBLIC TRUST BOARD; <br> 2.     ED DRURY; <br> 3.     LEFLORE COUNTY HOSPITAL AUTHORITY d/b/a EASTERN OKLAHOMA MEDICAL CENTER, INC.; <br> 4.     DANIEL HOLDMAN, M.D., <br> 5.     WILLIAM J. HAYES, M.D.; and <br> 6.     DEAN ANDERSON, P.A. <br><br>         Defendants. | CASE NO. 14-cv-00450-JHP |

## OPINION AND ORDER

Before the Court are Defendant Daniel Holdman, M.D.'s Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. No. 130), Plaintiff's Response (Doc. No. 136), and Defendant's Reply (Doc. No. 138). After consideration of the briefs, and for the reasons stated below, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

Plaintiff Robbie Burke, as Personal Representative of the Estate of John Patrick Kaczynski, deceased, filed this action pursuant to 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act ("OGTCA"), OKLA. STAT. tit. 51, §§ 151 *et seq.* According to

1

the Third Amended Complaint, on March 12, 2014,[1] Kaczynski was arrested by the LeFlore County Sheriff's Department for outstanding warrants and taken to jail at the LeFlore County Detention Center ("LCDC"). (Doc. No. 122, ¶¶ 2, 4). The following day, LCDC took Kaczynski to Eastern Oklahoma Medical Center ("EOMC") for medical treatment, where he was seen by Dr. Daniel Holdman. (*Id.* ¶ 4). EOMC evaluated Kaczynski by performing lab tests, which revealed some abnormal results, but nonetheless released Kaczynski back to LCDC with little or no treatment despite those results and his lengthy medical history. (*Id.* ¶¶ 5, 36-38). Kaczynski's health declined, allegedly the result of neglect at LCDC, and Kaczynski died several days later while still in jail custody. (*Id.* ¶ 10).

Relevant to this motion, Plaintiff asserts one claim against Dr. Holdman for medical negligence for failure to follow the applicable standard of medical care.[2] Dr. Holdman has now moved to dismiss Plaintiff's claim against him pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

## DISCUSSION

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[1] The Third Amended Complaint lists two different dates of Kaczynski's arrest: March 12, 2014 (¶ 2) and March 15, 2014 (¶ 30). For purposes of this motion, the Court will use the March 12 date, which is consistent with dates provided in Dr. Holdman's brief. The date of arrest is not relevant to this motion.
[2] The Third Amended Complaint does not raise a claim under 42 U.S.C. § 1983 against Dr. Holdman. Plaintiff confirms as much in her response brief. (Doc. No. 136, at 1 n.1). Accordingly, the Court will not address Dr. Holdman's arguments with respect to such a claim. (*See* Doc. No. 130, at 7-8).
[3] Dr. Holdman states in his motion that he is seeking dismissal pursuant to "Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure." (Doc. No. 130, at 1). However, Dr. Holdman does not brief his request for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Accordingly, the Court will consider only his request for dismissal pursuant to Rule 12(b)(6).

(2007). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Dr. Holdman argues he is immune from suit with respect to the medical negligence claim. Plaintiff's medical negligence claim is governed by Oklahoma law and subject to the provisions of the OGTCA. The OGTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. OKLA. STAT. tit. 51, § 152.1(A). This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the OGTCA. OKLA. STAT. tit. 51, § 152.1(B).

Dr. Holdman argues the limited waiver does not apply to suit against him for his participation in Kaczynski's medical care, because he was a state *employee* working at EOMC under contract. As Dr. Holdman correctly points out, the OGTCA did not waive immunity of state employees. In fact, the OGTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." OKLA. STAT. tit. 51, § 163(C).[4] For purposes of the OGTCA, "employees" of the state include "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." OKLA. STAT. tit. 51, § 152(7)(b)(7).

Plaintiff's allegations indicate Dr. Holdman meets the OGTCA's definition of "employee." Plaintiff alleges that, at all relevant times, Dr. Holdman was "a healthcare provider

---

[4] Section 163(C) does permit suit "based on the conduct of resident physicians and interns" against the individual employee. However, Plaintiff does not allege or argue Dr. Holdman is a resident or intern. Therefore, the exception does not apply.

3

licensed to practice medicine and employed by the hospital to deliver medical services." (Doc. No. 122, ¶ 21). Dr. Holdman was employed at EOMC, which is a city, county, or state entity. OKLA. STAT. tit. 51 § 152(11)(d)(1) (defining "political subdivision" to include "public trusts," including public hospitals). Plaintiff does not dispute EOMC is a "public trust" for purposes of the OGTCA. (*See* Doc. No. 122, ¶ 20 (alleging EOMC "was, at all relevant times hereto, a valid public trust created for the purpose of running the Eastern Oklahoma Medical Center through the Board of Trustees appointed by the LeFlore County Commissioners.")). Kaczynski was an LCDC detainee in custody when taken to EOMC for care. Accordingly, when Dr. Holdman treated Kaczynski at EOMC on March 13, 2014, he was caring for an inmate or detainee in the custody or control of law enforcement agencies. Therefore, Dr. Holdman was a state employee under the OGTCA and immune from suit. *See* OKLA. STAT. tit. 51, § 152(7)(b)(7).

In response, Plaintiff first argues the issue of whether Dr. Holdman was a statutorily defined "employee" of EOMC is a question of fact that should be subjected to further discovery. Plaintiff argues she has no knowledge of the arrangement between Dr. Holdman and EOMC and must see the "contract" Dr. Holdman claims he was under with EOMC. Second, Plaintiff argues the allegation in the Third Amended Complaint that Dr. Holdman was "employed" by EOMC was not meant to refer to the limited statutory understanding of the term "employee" in the OGTCA.

In anticipation of Plaintiff's first argument, Dr. Holdman attaches his contracts pursuant to which he provided medical services to Kaczynski at EOMC on March 13, 2014, as Exhibit A (Doc. No. 130-1). Exhibit A indicates Dr. Holdman had executed a Physician Agreement with NES Oklahoma, Inc. to "perform professional medical services at the facilities of medical institutions that [NES] may contract with to provide said services . . . ." (Doc. No. 130-1, at 38).

4

Exhibit A also indicates NES had executed an Agreement for Emergency Medical Services with EOMC to provide professional medical services at EOMC's Emergency Department. (Doc. No. 130-1, at 1). Although the contract between NES and EOMC does not name Dr. Holdman as an authorized medical services provider under the Agreement, the Agreement provides for an approval process for additional physicians. (Doc. No. 130-1, at 27).

Plaintiff argues the Court should disregard these contracts, because they do not meet the criteria outlined under Tenth Circuit law for consideration on a motion to dismiss. The Court may consider these contracts without converting the motion into one for summary judgment if they are documents "(1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997)). Plaintiff's Third Amended Complaint raises the issue of Dr. Holdman's employment relationship with EOMC, and indeed alleges Dr. Holdman was "employed by the hospital" when he treated Kaczynski. (Doc. No. 122, ¶ 21). The attached contracts are thus referenced in the Third Amended Complaint and central to Plaintiff's claims, and their authenticity is undisputed.[5] For this reason, Dr. Holdman is not precluded from attaching these documents.[6] Based on these contracts and Plaintiff's allegations, the Court is satisfied that Dr. Holdman was working under contract with EOMC when he provided emergency room care to Kaczynski. The Court

---

[5] Plaintiff does not dispute the contracts' authenticity but rather argues they are presented too early in the discovery process to be subjected to a proper authenticity dispute. (Doc. No. 136, at 5 n.3). After reviewing the contracts, the Court can find no reason to doubt their authenticity.

[6] Plaintiff refers to Dr. Holdman's deposition testimony and EOMC's Answer to the Corrected Second Amended Complaint in support of her argument that further discovery is required into the relationship between Dr. Holdman and EOMC. Though not necessary to the Court's conclusion, these documents would not alter the outcome. At deposition, Dr. Holdman testified he was under contract at EOMC through NES. (Doc. No. 136-1, 9:16-22). Further, EOMC's denial in its Answer that Dr. Holdman was its agent, servant, or employee is simply an unsupported allegation that would not be appropriately considered even on a motion for summary judgment.

disagrees with Plaintiff's contention that the contracts are insufficient to demonstrate Dr. Holdman's relationship with EOMC.

Finally, the Court disagrees with Plaintiff's second argument, that her use of the phrase "employed by the hospital" in the Third Amended Complaint should be disregarded as imprecise. Dr. Holdman already filed a motion to dismiss Plaintiff's Corrected Second Amended Complaint on similar grounds (Doc. No. 77), and Plaintiff was subsequently permitted to amend her complaint to add new parties. Plaintiff could have amended her complaint at that time to clarify her understanding of Dr. Holdman's relationship with EOMC in light of discovery, but she failed to do so. Plaintiff has alleged Dr. Holdman was "employed" by EOMC to treat patients at the hospital, and Dr. Holdman does not dispute this was the case. Plaintiff does not point to any alternate scenario in which Dr. Holdman could have treated Kaczynski at EOMC without being under contract with EOMC to do so. Dr. Holdman is immune from suit as an "employee" under the OGTCA for his treatment of Kaczynski. OKLA. STAT. tit. 51, § 152(7)(b)(7), 163(C). Accordingly, the claim against Dr. Holdman is dismissed.

## CONCLUSION

For the reasons detailed above, Defendant Dr. Daniel Holdman's Motion to Dismiss (Doc. No. 130) is **GRANTED**.

**IT IS SO ORDERED** this 11th day of July, 2016.

*[signature]*
James H. Payne
United States District Judge
Eastern District of Oklahoma